**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDDIE RUCKER, individually on behalf of all others similarly situated, | Case no. |
| Plaintiffs, | |
| v. | **CLASS ACTION** |
| | **JURY DEMAND** |
| NATIONAL AUTOMOTIVE FINANCIAL SERVICES LLC a New Jersey limited liability company, NATIONAL AUTO DIVISION, LLC a New York limited liability company, METRO MARKETING, INC. a New Jersey corporation, and ARIEL FREUD, a New Jersey individual, | |
| Defendants. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Eddie Rucker ("Plaintiff Rucker" or "Rucker") brings this Class Action Complaint and Demand for Jury Trial against Defendant National Automotive Financial Services LLC ("Defendant NAFS" or "NAFS"), Defendant National Auto Division, LLC ("Defendant National Auto Division" or "National Auto Division"), Defendant Metro Marketing, Inc. ("Defendant Metro Marketing" or "Metro Marketing") and Defendant Ariel Freud. The purpose of this case is to stop Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making unsolicited calls to consumers *without their consent*, including calls to consumers who registered their phone numbers on the National Do Not Call registry ("DNC") and to obtain injunctive and monetary relief for all persons injured by the conduct of the Defendants. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Eddie Rucker is a resident of Ripley, Mississippi.

2.     Defendant NAFS is a New Jersey registered company with its headquarters located in Toms River, New Jersey. Defendant NAFS conducts business throughout this District and throughout the United States.

3.     Defendant National Auto Division is a New Jersey registered company with its headquarters located in Howell, New Jersey. Defendant conducts business throughout this District and throughout the United States.

4.     Defendant Metro Marketing is a New Jersey registered corporation with its headquarters located in Howell, New Jersey. Defendant conducts business throughout this District and throughout the United States.

5.     Defendant Ariel Freud is a resident of New Jersey. Freud conducts business in this District through his companies and directs his company's agents to make calls to individuals from this District.

## JURISDICTION AND VENUE

6.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

7.     This Court has personal jurisdiction over the Defendants because each of the Defendants conducts business in this District and/or contacts with other companies to call individuals from this District.

## TCPA BACKGROUND

8.     As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about

robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

9.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or pre-recorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

10.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, pre-recorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

11.     While "prior express consent" is required for all pre-recorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver pre-recorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

12.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

13.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

14.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

15.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

16.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

17.     According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

18.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

19.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

20.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## INTRODUCTION TO DEFENDANTS

21.     Ariel Freud is the owner/President of NAFS,[3] National Auto Division[4] and Metro Marketing.[5]

22.     NAFS sells extended vehicle warranty plans to consumers.[6]

23.     National Auto Division sells extended vehicle warranty plans to consumers.[7]

24.     Metro Marketing is a wholly-owned subsidiary of Corfacts, Inc., another company that is owned by Ariel Freud.[8]

25.     Metro Marketing is a full-service telemarketing company that provides outgoing call services for a number of industries including medical and extended vehicle warranty plans.

26.     All of the aforementioned entities are involved in selling extended vehicle warranty plans to consumers.

27.     The Defendants place calls to consumers without consent, including calls to phone numbers that are registered on the DNC.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3]
http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults/OfficerRegisteredAgentName/freud%20ariel/Page1
[4] *Id.*
[5] https://www.linkedin.com/in/ariel-freud-a2493012/
[6] http://www.nafservices.com/about/
[7] https://www.nationalautodivision.com/about-nad/
[8] https://www.marketscreener.com/CORFACTS-INC-77220/company/

28.     To make matters worse, the Defendants continue to place calls to consumers after they have explicitly told Defendants to stop calling.

29.     In Plaintiff Rucker's case, the Defendants, under the direction of Ariel Freud placed at least 8 calls to Rucker's cell phone number, even though Rucker has his phone number registered on the DNC and despite his requests for the calls to stop.

## COMMON ALLEGATIONS

## THE ARIEL FREUD COMPANIES ACT AS ONE COMBINED COMPANY

30.     Freud owns and operates a number of companies that sell extended vehicle warranty plans to consumers.

31.     The Better Business Bureau ("BBB") posted a consumer warning about Defendant NAFS - NationalAutomotiveFinancialServices.com's telemarketing calls, claiming that the various different company names are used to confuse or mislead consumers:



**Consumer Warning Issued by the BBB**

"BBB received claims from consumers stating that warranties were sold to elderly parents, some with dementia or Alzheimer's, some who had never driven or owned a vehicle, some who were already covered under a full auto warranty. There were claims of bullying and harassment. <u>Consumers reported receiving multiple, repeated calls after asking to be removed from the call list.</u> There have been reports of hang-ups, yelling, aggressive, abusive, rude behavior."

<u>This company has operated under several names</u> in an attempt to confuse or mislead consumers including but not limited to: National Auto Division, National Automotive Financial Services, Nationwide Auto Financial Services, Warranty Warehouse, Metro Marketing, Nationwide Automotive

If you have been contacted by National Automotive Financial Services please use caution, they have a pattern of misleading consumers who already have warranty coverage in an effort to trick them into switching to their policies by making false claims about the consumers existing coverage and/or the company they purchased coverage thru [9]

**Metro Marketing:**

32.     In numerous job postings, such as on the New Jersey state (NJ.us) website, as seen below, Metro Marketing advertises that it is hiring telemarketers to sell warranty plans on behalf of National Auto Division and NAFS. For example:

<u>Metro Marketing Hiring Event</u>

**03/14/2019**
9am - 4pm

**Location:**
Metro Marketing
2323 Highway 9 North
Howell , NJ  07731
**County:** Monmouth

**\*\*JOIN US FOR OUR  HIRING EVENT\*\***

---

[9] http://www.nationalautomotivefinancialservices.com/

Our Fun Fast growing company National Auto Division & National Automotive Financial Services is in search of highly motivated individuals to join our Inside Sales Team Marketing Auto Warranties across the Country. Our Company offers the most aggressive Compensation Plans in the Warranty Industry, with our Sales Reps averaging $18+ per hour and our Top Reps making over $1,800 per week!!

Position Includes:

* Starting pay of $15 per hour + Commission
* Immediate Earned Vacation and Sick Days
* Full Time and Part Time Shifts (OT of 15 hours a week available as well)
* Both Day and Night Shifts Available
* Hourly Rate, Commission and Bonuses (Weekly and Monthly)
* No Back Ground Check Required
* Health Benefits available after 90 days
* Sales Promos (New Car, 55 inch TVs, IPads , Laptops, and $500 Shopping Sprees)
* Paid 1 Week Training Program
* Convenient Route 9 location in Howell NJ & Toms River NJ, easily accessible via Parkway and Public Transportation
* Opportunity for Advancement into Management and Corporate Positions
* A Rated Product with the BBB
* Business with over 20+ Years of Stability and Success

Additional Questions? Call Zina at 800-696-7788 x 688 to take the next Step in Join our Winning Team!!! [10]

33.    Metro Marketing was issued a citation by the FCC in 2007 for violating the FCC's rules that govern telemarketing calls, specifically call consumers whose had previously made do not call requests.[11]

34.    Freud uses BestNJCareers.com to hire telemarketing agents for both National Auto Division and NAFS:

## About Us

BestNJCareers.com, located in the heart of the Jersey Shore, serves job seekers and career oriented candidates in Central New Jersey that are looking to grow personally and professionally. Our offices, located in closs proximity to Monmouth, Ocean, and Middlesex counties, offer a relaxed atmosphere, extensive training, and state of the art technology to offer job seekers the best possible atmosphere to succeed. BestNJCareers.com, in partnership with National Auto Division, located in Howell, NJ, as well as National Automotive Financial Services, located in Toms River, NJ, is looking for hard working and hungry prospective employees to join their experience staffs. For more information, please visit https://www.bestnjcareers.com/apply. [12]

---

[10] http://lwd.state.nj.us/WorkForceDirectory/calendardetails.jsp?calendarid=44445
[11] https://transition.fcc.gov/eb/Orders/2007/DOC-303229A1.html
[12] https://www.bestnjcareers.com

35.     When applying for the open house that is advertised on BestNJCareers.com job seekers are instructed to visit Metro Marketing so they can apply:



**NAFS and National Auto Division:**

36.     NAFS and National Auto Division are used interchangeably. For example, NAFS lists its phone number as 877-411-2447 on its website.[14]

37.     An automated system identifies 877-411-2447 as being National Automotive Financial Services. However, pressing '3' in order to purchase a new warranty leads to an automated message that identifies the company as being National Auto Division.

38.     Both NAFS and National Auto Division sell the same warranty plans, with the same coverage using slightly different names:

---

[13] https://www.bestnjcareers.com/open-house/
[14] http://www.nafservices.com/





**ARIEL FREUD DIRECTS UNSOLICITED CALLS TO CONSUMERS USING MULTIPLE COMPANY NAMES**

39.     Former employees who worked for Freud-owned companies have posted complaints about the unsolicited telemarketing they were directed to take part in so they could sell vehicle warranty plans.

---

[15] https://www.nationalautodivision.com/
[16] http://www.nafservices.com/about/

40.     Freud's telemarketing employees have listed cold calling as part of their job description selling extended vehicle warranties to consumers. For example:

**Sales Representative**
National Auto Division
Oct 2012 – Present · 7 yrs 7 mos
Howell Twp, NJ

Automotive Extended Warrantee Sales, Cold Calling, Call Backs, Complete Sales Process From Open To Close. Responsible For Pitching Customers, And Either Closing Or Turning the Prospect Over If Necessary. Fully Fluent In Sales Process From Generating Interest To Obtaining Payment In A Comfortable And Ethical Manner.                    [17]

41.     Job reviews on Indeed.com for Metro Marketing include "Cold calling to customers on a daily basis and tending to their needs or concerns,"[18] and "A very stressful / [fast] paced environment. Although you do have the opportunity to make money if you can persuade people to purchase the car warranty."[19]

42.     Freud also directs his telemarketing employees to ignore stop requests that consumers make.

43.     For example, on RipoffReport.com, a former employee posted a complaint about Freud's companies stating that "they call consumers that are on the DNC list, and when told that they curse consumer and hang up and do not put them on the DNC on purpose[.] I can write the lies they tell consumers all day the list is endless and the owner and President Ariel… Freud do not care as long as you get as many sales as possible…"[20]

---

[17] https://www.linkedin.com/in/john-mangini-1857b886/
[18] https://www.indeed.com/cmp/Metro-Marketing/reviews
[19] *Id.*
[20] https://www.ripoffreport.com/reports/metro-marketing/howell-new-jersey-07731/metro-marketing-ariel-fraud-fired-me-for-having-a-inter-office-relationship-howell-new-je-880163

44.     Another employee backed-up the above complaint stating, "As a former employee of the Howell, NJ branch, I can verify everything this guy is saying. I worked here for about six months…"[21]

45.     The above opt-out complaints were written over 5 years ago. However, the caller complaints listed below will show that Freud owned companies are still operating in a consistent manner which is to ignore requests for consumers to be put on a do not call list, and also to place cold calls to consumers.

46.     Upon information and belief, Freud uses different company names, such as NAFS and National Auto Division in order to maintain a positive online presence, or to lessen the number of consumer complaints each company receives online.

47.     National Auto Division has a 1.7 star rating on Google based on 46 reviews:



[22]

48.     National Auto Division has a D+ rating according to the BBB:

[21] *Id.*
[22] https://www.google.com/search?q=national+auto+division&oq=national+auto+division



49.     In comparison, NAFS has a 2 star rating according to Google, and has no rating

through the BBB:



[23] https://www.bbb.org/us/nj/howell/profile/extended-warranty-contract-service-companies/national-auto-division-llc-0221-90042529
[24] https://www.google.com/search?q=national+automotive+financial+services
[25] https://www.bbb.org/us/nj/toms-river/profile/auto-warranty-plans/national-automotive-financial-services-0221-90196883

50.     When Freud owned company agents are placing telemarketing calls, they sometimes use the name NAFS over National Auto Division, as NAFS has a higher rating on Google and has less complaints on both Google and the BBB than National Auto Division.

51.     There are numerous complaints posted online showing that Freud's vehicle warranty companies are placing illegal telemarketing calls to consumers and regardless of whether they are calling phone numbers registered on the DNC:

**NAFS Complaints:**

- "I got a call from this company customer service rep and had a tick horrible accent – cursed at me really bad !"[26]
- "I gotta a call from them yesterday. Initially talking one male who put me on hold to check pricing and seconds later another male got on the phone. When I told him that someone else was assisting me I was told he wasn't permitted to discuss numbers. When I told him the other person should have said that and then the call went south the male being rude and nasty trying to demean me saying I can't afford anything. REALLY and he's trying to get me to purchase a policy. I asked for the manager and he said was the manager being doing his job for 40 years. I told him he should have been fired a long time ago. I hung up on him. This company is a scam."[27]
- "**SCAM**. Received a call from a guy name Allen Nevinsky..."[28]
- "They keep calling me on different numbers when I tell them to put me on do not call list and my phone number is on do not call list."[29]
- "Unsolicited calls. Frequency borders on harassment. They say they have access to Ford's database but either don't have the right information or that is a lie."[30]

**National Auto Division Complaints:**

- "BEWARE! I would give them zero stars if I could. They sold their product to my dad who has alzheimer's and no car…"[31]
- "0 Stars. Totally rude guy has called me twice. Want to know kilometers but won't tell me who he is or what company he is with. When I said I wasn't

---

[26] https://www.bbb.org/us/nj/toms-river/profile/auto-warranty-plans/national-automotive-financial-services-0221-90196883

[27] https://www.google.com/search?q=national+automotive+financial+services - Reviews

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] https://www.google.com/search?q=national+auto+division - Reviews

- interested, he accused me of being rude and hung up. Next call he asked for my husband…"[32]
- "Filthiest mouther person that has ever called my house. He told my 73 yr old mother…"[33]
- "They sold my mom, who doesn't drive, a warranty without her providing proper information. Plus she has dementia and had no clue what she was agreeing to."[34]
- "This company calls my house ALL the time."[35]

8 August 2016



**"Great Sales learning experience"**

★★☆☆☆ ▼  Sales Representative in Point Pleasant Beach, Ocean, NJ

🟥 Negative Outlook

I worked at Metro Marketing for more than 3 years

**Pros**

I am a Sales Professional and must not forget where I come from. This organization gave the opportunity for me to realize and utilize my sales skills. using a automatic dialer and taking up to 300 calls daily really helped form me into the Sales professional I am today.                                                                            36

## FREUD-OWNED COMPANIES PLACE SOLICITATION CALLS TO CONSUMERS REGARDLESS OF WHETHER THEY ARE CALLING PHONE NUMBERS THAT ARE REGISTERED ON THE DNC, AND REGARDLESS OF WHETHER THEY HAVE CONSENT TO PLACE SUCH CALLS

52.    As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] https://www.glassdoor.co.nz/Reviews/Metro-Marketing-Reviews-E595878.htm

53.     Yet in violation of this rule, the Defendants, under the guidance of Ariel Freud, fail to obtain any express written consent prior to placing autodialed calls to cellular telephone numbers such as those of Plaintiff.

54.     To make matters worse, the Defendants place unsolicited calls to consumers that have their phone numbers registered on the DNC.

## PLAINTIFF RUCKER'S ALLEGATIONS

### NAFS Agents Placed Calls to Plaintiff's DNC-Registered Cellular Phone Number Without His Consent and Despite Multiple Requests to Stop Calling

55.     Plaintiff Rucker registered his cell phone number with the DNC on December 20, 2008.

56.     Plaintiff's cell phone is used for personal use only and is not associated with a business.

57.     In early February 2020, Plaintiff began receiving phone calls from telemarketers who identified themselves as NAFS either when the call was answered, or when the Plaintiff called the phone number back.

58.     On February 21, 2020, Plaintiff missed a call from NAFS using phone number 616-613-6102. When he called this number back, an automated system identified the company as National Automotive Financial Services, Defendant NAFS. Plaintiff was told in the message that he could enter his phone number to be opted-out, which he tried. The system responded explaining that Plaintiff's number is invalid.

59.     On February 23, 2020 at 9:28 AM, Plaintiff received a call from NAFS using phone number 470-468-0133.

60.     Plaintiff Rucker received a second call from NAFS using phone number 470-468-0133 on February 24, 2020 at 8:30 AM. Plaintiff answered this call and spoke with an agent who identified himself as Paul Graham with National Automobile Financial. Paul asked if he was speaking to Bradley Leopard. Plaintiff said that he was not, to stop calling him, and the agent apologized, and the call ended.

61.     On February 26, 2020 at 12:55 PM, Plaintiff received a live voicemail from 520-210-7160 that stated, "Hey Bradley…" there was then a pause and the agent hung up.

62.     On February 26, 2020 at 5:50 PM, Plaintiff received yet another call to his cell phone from an Ariel Freud owned company, this time using phone number 470-468-0133. As with previous calls, the phone call began with an audible pause. The agent asked to speak with Bradley with regards to a Chrysler vehicle. Plaintiff Rucker told the agent that he is not Bradley and does not own a Chrysler vehicle. The agent became rude, especially when Plaintiff asked for the calls to stop and said that he was going to report the call. The agent answered, "Go ahead!"

63.     On February 27, 2020 at 1:59 PM, Plaintiff received another call to his cell phone. The call was placed using phone number 719-294-3882. This time, the agent identified the company as being "Automotive Financial Services" and asked to speak to Bradley. Plaintiff told the agent that he already told the previous caller that they had the wrong number, to stop calling, and was going to report her.

64.     Plaintiff received additional unwanted calls to his cell phone on February 27, 2020 at 2:50 PM using phone number 662-553-0218 and February 28, 2020 at 9:13 AM using phone number 470-468-0133.

65. Plaintiff does not have a relationship with NAFS, or any of Ariel Freud's companies. Simply put, NAFS did not obtain Plaintiff's prior express written consent to place any solicitation telephone calls to him using an autodialer.

66. To make matters worse, Plaintiff made it abundantly clear to the NAFS agents that they were calling the wrong number, but the calls continued.

67. The unauthorized telephone calls from the Defendants harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Rucker's use and enjoyment of his cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

68. Seeking redress for these injuries, Rucker, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed phone calls to cellular phone numbers, including unsolicited calls to phone numbers registered on the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls Made by the Defendants

69. Plaintiff Rucker brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendants (or an agent acting on behalf of Defendants) called more than one time on his/her residential telephone number, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendants called Plaintiff, and (5) for whom Defendants claim (a) it obtained prior express written consent in the same manner as Defendants claim it supposedly obtained prior express written consent to call, or

(b) it did not obtain prior express written consent.

**Internal Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendants called Plaintiff.

70.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants', their subsidiaries, parents, successors, predecessors, and any entity in which either Defendants or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against either Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

71.    **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

72.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)  whether Defendants made these calls without prior express written consent;

(b)  whether Defendants placed more than one call to phone numbers registered on the DNC, such as those of Plaintiff and the Do Not Call Registry Class;

(c)  whether Defendants placed phone calls to Plaintiff and members of the Internal DNC Class despite being asked to stop calling;

(d) whether Ariel Freud directed calls to members of the class;

(e) whether Defendants' calls constitute TCPA violations; and

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

73.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and neither Defendant has defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

74.     **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision

by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

75.     Plaintiff repeats and realleges the paragraphs 1 through 74 of this Complaint and incorporates them by reference herein.

76.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

77.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[37]

78.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

79.     The Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do

---

[37] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

80.     The Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant NAFS or agents working for Ariel Freud, of 47 C.F.R. § 64.1200, as described above.

81.     As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and are entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

82.     Plaintiff repeats and realleges paragraphs 1 through 74 of this Complaint and incorporates them by reference.

83.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

84.     The Defendants placed solicitation calls to Plaintiff and members of the Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendants' to initiate telemarketing calls. 47 C.F.R.

64.1200(d)(1)-(6).

85. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

86. The Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to between $500 and $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rucker, individually and on behalf of the Classes, prays for the following relief:

a. An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b. An award of actual and/or statutory damages for the benefit of Plaintiff and the Classes, and costs;

c. An order declaring that Defendants' actions, as set out above, violate the TCPA;

d. An injunction requiring the Defendants to cease all unsolicited calling activity, to implement sufficient TCPA related policies and procedures, and to otherwise protect the interests of the Classes; and

e. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**EDDIE RUCKER**, individually and on behalf of those similarly situated individuals

Dated: November 17, 2020

/s/ Stefan Coleman

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN
1072 Madison Ave, Unit 1
Lakewood, NJ 08701
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Patrick Peluso*
Woodrow & Peluso , LLC
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
Telephone: 702.213.0676
ppeluso@woodrowpeluso.com

*Attorneys for Plaintiff Jones and the putative Classes*

*\*Pro Hac Vice motions forthcoming.*