**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDDIE RUCKER, individual on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL AUTOMOTIVE FINANCIAL SERVICES LLC, et al.,<br><br>Defendants. | Civil Action No. 20-16377 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants National Auto Division, LLC ("NAD"), Metro Marketing, Inc. ("Metro Marketing"), and Ariel Freud's ("Freud") (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint. (ECF No. 10.) Plaintiff opposed (ECF No. 12), and Defendants replied (ECF No. 13). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants the Motion to Dismiss.

**I.   BACKGROUND**

This putative class action alleges that Defendants violated the Telephone Consumer Protection Act ("TCPA"). Freud is the owner and President of National Automotive Financial Services LLC ("NAFS"), NAD and Metro Marketing. (Compl. ¶ 21, ECF No. 1.) Plaintiff Eddie Rucker alleges that Defendants, under the guidance of Freud, violated the TCPA by placing autodialed calls to cellular telephone numbers without obtaining the consumers' express written

consent and also by making repeated, unsolicited calls to consumers who registered their numbers on the National Do Not Call Registry ("DNC"). (*Id.* ¶¶ 53, 54.)

Plaintiff alleges that Freud owns and operates several companies, including Defendant entities here, that sell extended vehicle warranty plans to customers. (*Id.* ¶¶ 30, 32, 38.) Plaintiff contends that all Defendants engaged in concerted telemarketing activity and may be held liable for violating the TCPA. (Opp'n Br. at 1-2.) Plaintiff claims that Metro Marketing advertises on job postings that it hires telemarketers to sell warranty plans on behalf of NAD and NAFS. (Compl. ¶ 32.) The Better Business Bureau posted a consumer warning that NAFS, NAD and Metro Marketing, among other entities, "operated under several names in an attempt to confuse or mislead consumers." (*Id.* ¶ 31.) Plaintiff further alleges that NAFS and NAD are used interchangeably. (*Id.* ¶ 36.) For example, Plaintiff claims that dialing NAFS's phone number and pressing '3,' an option used to purchase a new warranty, leads to an automated message that identifies the company as NAD. (*Id.* ¶ 37.) The Complaint alleges that Freud uses different company names, such as NAFS and NAD in order to maintain a positive online presence, or to lessen the number of consumer complaints each company receives online. (*Id.* ¶ 46.) Plaintiff also claims that former employees of Freud-owned companies report that Freud's companies call consumers on the DNC list, and cite one former employee as saying "they curse [the] consumer and hang up and do not put them on the DNC on purpose[.] I can write the lies they tell consumers all day. . . and the owner and President Ariel . . . Freud do not care. . ." (*Id.* ¶ 43.)

Against that backdrop, in February 2020, Plaintiff began to receive calls from telemarketers who identified themselves as calling on behalf of NAFS. (*Id.* ¶ 57.) Plaintiff alleges that he registered his cell phone number with the DNC on December 20, 2008. (*Id.* ¶ 55.) All in all, Plaintiff alleges that he received eight calls. Plaintiff received calls directly from NAFS on February 21, 23, and 24, 2020. (*Id.* ¶¶ 58-60.) Plaintiff also alleges that on February 26, 2020, he

2

received another call from an "Ariel Freud owned company," though he does not plead the name of that entity. (*Id.* ¶ 62.) Plaintiff also received three more calls over the course of February 26 and 27, 2020, although he does not allege that these calls were made by NAFS or any other company owned by Freud. (*Id.* ¶¶ 61, 63-64.)

On November 17, 2020, Plaintiff brought this action on behalf of himself and all others similarly situated, alleging that Defendants' practice of calling customers who have registered their number on the DNC violates the TCPA. (*See generally* Compl.) Plaintiff alleges that Defendants violated 47 C.F.R. § 64.1200(c), which provides in relevant part as follows:

> No person or entity shall initiate any telephone solicitation to: . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

(Complaint ¶¶ 76-81.) Plaintiff sued under two implementing regulations of the TCPA. (Compl. ¶¶ 83-86.) On February 26, 2021, NAD, Metro Marketing and Freud moved to dismiss this action.[1]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[2] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"

---

[1] Defendant NAFS did not join the Motion and remains a party to this action.

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

3

*Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The court, however, may ignore legal conclusions or factually unsupported accusations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

### III.  DISCUSSION

NAD, Metro Marketing and Freud argue that they cannot be held liable for the alleged calls as a matter of law. (Defs.' Moving Br. 1.) Defendants contend that Freud has no individual liability for personal participation as the owner and president of NAFS, NAD and Metro Marketing because the Third Circuit has not adopted the doctrine of personal participation liability for corporate officers under the TCPA, and even if the doctrine applied, the Complaint fails to state a claim against Freud under the doctrine or to demonstrate that the corporate veil should be pierced. (*Id.*) Second, NAD, Metro Marketing and Freud argue that they are not liable for any of the calls placed under any other vicarious liability theory. (*Id.* at 2)

Plaintiff counters that Freud was personally involved in making the calls at issue, and that Freud directed his companies and their employees to make unsolicited calls to consumers in violation of the TCPA. (Opp'n Br. 1.) Plaintiff contends that the TCPA applies to both companies and individuals and personal participation or authorization of a TCPA violation is enough to assign

4

liability to corporate officers. (*Id.* at 1-2.) Plaintiff further argues that the Complaint alleges that all the Defendants—not merely NAFS—were responsible for the phone calls at issue. (*Id.* at 2.) In support of this contention, Plaintiff claims that the "Defendants may be held liable under an alter ego standard." (*Id.* at 11.)

### A.   Personal Participation Liability Under the TCPA

The Court first addresses Freud's individual liability for personal participation under the TCPA. Defendants argue that the claims against Freud should be dismissed because he is not personally liable for the acts of Defendant NAFS. (Defs.' Moving Br. 5-8.) The Third Circuit has not resolved whether personal participation liability is available under the TCPA. In *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, the majority noted that "we doubt as well, however, whether such common-law personal participation liability is available against corporate officers under the TCPA." 885 F.3d 154, 160 (3d Cir. 2018). Despite such reservations, the Court went on to *assume* that personal participation liability was available under the TCPA for the purposes of that appeal. *Id.* at 161-62. In any event, this Court need not decide whether Freud may be held personally liable under the TCPA as Plaintiff fails to plausibly allege that Freud had any direct, personal participation in the calls directed at Plaintiff.

In *City Select*, the Third Circuit assumed for the purposes of its' analysis that "[a] corporate officer can be personally liable if he 'actually committed the conduct that violated the TCPA, and/or [he] actively oversaw and directed this conduct.'" *Id.* (citation omitted). Here, the Court does the same and finds that Plaintiff fails to allege facts demonstrating that Freud authorized the calls at issue. Plaintiff relies on Freud's status as the President and owner of the Defendant entities to allege that NAFS, in partnership with the other Defendants, made calls to the Plaintiff "under the direction" and "under the guidance" of Freud. (Compl. ¶¶ 29, 53.) Ownership, however, is not enough to sustain personal liability for individuals. *See Maryland v. Universal Elections*, 787

5

F. Supp. 2d 408, 417 (D. Md. 2011) (noting that under the TCPA "officers or employees are generally not liable for statutory violations based solely on their corporate offices or ownership"). Courts in other circuits that have endorsed this theory of liability under the TCPA have required plaintiffs to allege that the officers "ha[ve] direct, personal participation in or personally authorize[] the conduct found to have violated the TCPA." *Bank v. Simple Health Plans LLC*, No. 18-6457, 2019 WL 7878570, at *6 (E.D.N.Y. Dec. 12, 2019), *adopted by* 2020 WL 606619 (Feb. 7, 2020); *see also Lucas v. Gotra*, No. 18-664, 2019 WL 3349957, at *7 (S.D. Ohio July 25, 2019), *adopted by* 2019 WL 3753245 (Aug. 8, 2019) (collecting cases).

Here, Plaintiff advanced generic allegations that the calls were made "under the direction" of Freud and that he received a call from an "Ariel Freud owned company." (Compl. ¶¶ 29, 62). Moreover, Plaintiff broadly alleges that Freud "oversaw, directed and authorized" his companies and the calls at issue. (Opp'n Br. 7.) But generic, conclusory allegations of participation or authorization are not enough. *See Simple Health Plans LLC*, 2019 WL 7878570, at *7 ("Courts have consistently found that conclusory allegations that corporate officers personally participated in violations of the TCPA are insufficient to state a claim."); *Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050, 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018) (finding allegations that individual defendants personally "authorized," "oversaw," and "directed" violations at issue were not enough to sustain a claim for personal liability under the TCPA.). Plaintiff also suggests that a former employee's statement that "Freud do[es] not care as long as you get as many sales as possible," along with other complaints from former employees, is enough to sustain personal participation liability. (Opp'n Br. 7 (citing Compl. ¶ 43).) But this general workplace complaint is not enough to sustain a claim here.[3]

---

[3] In any event, this allegation is attributed to Metro Marketing, which Plaintiff does not allege placed the calls at issue. (*See* Compl. ¶ 43 n.20.)

6

Plaintiff attempts to shore up his allegations against Freud by noting that he needs discovery to assess Freud's involvement. (Opp'n Br. 8.) But this argument ignores that, to reach discovery, Plaintiff must plead facts that, when construed in his favor, plausibly state a claim upon which the Court may grant relief. *See, e.g., Ogbin v. Citifinancial Mortg. Co.*, 09-0023, 2009 WL 4250036, at *2 (D.N.J. Nov. 19, 2009) (citing *Twombly*, 550 U.S. at 563 & n. 8) ("Discovery cannot serve as a fishing expedition through which plaintiffs search for evidence to support facts they have not yet pleaded."). The Court finds that Plaintiff has not pled sufficient facts to support a claim under the TCPA against Ariel Freud for personal participation liability theory.[4]

### B.     Alter Ego Liability

Defendant next argues that Plaintiff fails to allege that NAFS is the alter ego of Freud or the other Defendant entities. (Defs. Moving Br. 7-8.) Plaintiff seems to concede this argument as to Freud. (Pl.'s Br. 5 ("Only. . . . 'personal participation theory' is necessary to this analysis, and it is sufficient to assign liability to Freud.").) In any event, Plaintiff counters that he has made sufficient factual allegations that all Defendants operate as a common enterprise and are liable as alter egos.[5] (Opp'n Br. 9-12.) The Court finds that Plaintiff has not pled facts sufficient to pierce the corporate veil under an alter ego theory.

---

[4] The Court also notes that Plaintiff alleges that he received a call from an "Ariel Freud owned company" on February 26, 2020. (Compl. ¶ 62.) In the Opposition, however, Plaintiff admits that he "cannot be sure as to which company actually made the calls, especially when the caller was not identified; thus, Plaintiff alleged that the unidentified calls came from 'an Ariel Freud owned company,' referring to NAFS, NAD and Metro [Marketing]." (Opp'n Br. 10.) Even taking as true Plaintiff's allegation in the Complaint (which Plaintiff himself has now thrown into doubt), the allegation does not provide facts sufficient under Rule 8(a) to substantiate that a Freud-owned company placed this call. *See Twombly*, 550 U.S. at 555.

[5] Plaintiff also seemingly alleges in his Opposition that Defendants in this action, other than NAFS, also made calls to him. (Opp'n Br. 9, 12 ("But Rucker's allegations are not limited to NAFS. He alleges that the telemarketing calls he received are part of a concerted effort among all the Defendants"; "Plaintiff's factual allegations support a theory of direct liability for all the Defendants, such that vicarious liability is not relevant to the analysis."). While the Court addresses

Piercing the corporate veil is an extraordinary remedy. *See Mitsui O.S.K. Lines v. Cont'l Shipping Line, Inc.*, No. 04-2278, 2007 WL 1959250, at *4 (D.N.J. June 29, 2007) (citing *Trustees of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Latex*, 332 F.3d 188, 197 (3d Cir. 2003). Under New Jersey law, two elements must be present to pierce the corporate veil: "[f]irst, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (citation omitted). Regarding the first element, the Third Circuit applies the six non-binding *Craig* factors to guide this inquiry:

> [1] gross undercapitalization . . . [2] "failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."

*Id.* (quoting *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (alterations in original). Courts in this district have granted 12(b)(6) motions to dismiss when the Complaint alleges but does not plead with sufficient particularity that the adherence to "the fiction of separate corporate existence would sanction a fraud or promote injustice." *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (citation omitted).

Here, the Court notes that Plaintiff has pled that Freud and the entities in question have failed to observe corporate formalities. Plaintiff alleges that "NAFS and [NAD] are used interchangeably" (*Id.* ¶¶ 36-38), and that "Freud uses different company names, such as NAFS and

---

any claims against Defendants for vicarious liability, the Court also notes that the Complaint does not name any Defendant in this action, other than NAFS, that directly made calls to Plaintiff. (*See* Compl. ¶¶ 57-64.)

[NAD] in order to maintain a positive online presence." (*Id.* ¶ 46). Particularly troubling, the Court also notes that Plaintiff further charges that the Better Business Bureau issued a consumer warning concerning the Defendant entities, that "[t]his company has operated under several names in an attempt to confuse or mislead consumers including. . . . [NAD], [NAFS]. . . . Metro Marketing." (Compl. ¶ 7.) The Complaint, however, pleads no other facts to satisfy the *Craig* factors. For example, Plaintiff alleges no facts which, accepted as true, would demonstrate a lack of corporate records, insolvency, or the siphoning of funds from NAFS to Freud. And while no one factor is dispositive, this is not enough of an extraordinary circumstance to pierce the corporate veil. *See High 5 Games, LLC v. Marks*, No. 13-7161, 2019 WL 3761114, at *6 (D.N.J. Aug. 9, 2019) (ruling that consolidated financial statements, a shared website, and common executives and officers were not enough to pierce the corporate veil where the plaintiff pled no other relevant factors); *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 427 (D.N.J. 2019) ("[I]t is well-established that 'common ownership and common management alone' are insufficient for veil-piercing purposes.") (citation omitted); *Wrist Worldwide Trading GMBH v. MV Auto Banner*, No. 10-2326, 2011 WL 5414307, at *4-5 (D.N.J. Nov. 4, 2011) (dismissing complaint that alleged a corporation "and its members were operated as a unit without regard to their corporate separateness" but was devoid of facts showing "non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation… or absence of corporate records.")

Moreover, with respect to the calls alleged by Plaintiff, none of the calls are alleged to have been made on behalf of any of the entities except NAFS, which is not a movant in this Motion.[6] The Complaint, therefore, does not plausibly state a claim for alter ego liability.

---

[6] Because Plaintiff has not adequately alleged any of the calls were made on behalf of anyone else other than NAFS, vicarious liability through a principal-agent relationship is not applicable here.

9

## IV.   CONCLUSION

For the reasons set forth above, the Court grants Defendants NAD, Metro Marketing, and Freud's Motion to Dismiss the Complaint against them for failure to state a claim. The Motion is granted without prejudice.  An appropriate order will follow.

/s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

---

"An agency relationship arises when one party authorizes another to act *on its behalf* while retaining the right to control and direct any such acts." *See Rodriguez v. Hudson Cnty. Collision Co.*, 686 A.2d 776 (N.J. App. Div. 1997) (internal quotations and citations omitted) (emphasis added).

10